UNITED STATES, Appellee

v.

THOMAS YVONNE PRESCOTT, Airman Apprentice, U. S. Navy, Appellant

2 USCMA 122, 6 CMR 122

No. 812

Decided December 31, 1952

CDR. Raymond van Wolkenten, USN, for Appellant.

CDR. Malcom J. Bradbury, USN, and CAPT. Francis C. Foley, Jr., USMCR, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, Prescott, an airman apprentice, United States Navy, was charged with violation of Article 86, Uniform Code of Military Justice, 50 USC § 680. The specification alleged an unauthorized absence of three hours and twenty minutes. Upon trial by special court-martial[1] on February 11, 1952, at U. S. Naval Air Station, San Diego, California, the accused pleaded guilty to the charge and specification thereunder and, being properly instructed regarding the effect thereof, persisted in the plea. He was convicted of the offense charged and sentenced to discharge from the service with a bad-conduct discharge, to forfeit $62.46 pay per month for one month, and to confinement at hard labor for three months. Two previous convictions, both by summary courts-martial under the Uniform Code of Military Justice, 50 USC §§ 551–736, were considered.

The convening authority on February 15, 1952, approved only so much of the sentence as provided for a bad-conduct discharge and confinement at hard labor for three months, and suspended the bad-conduct discharge until

[1] 6–52–S–485

the accused's release from confinement or until completion of appellate review, whichever be the later date. The officer exercising general court-martial jurisdiction on March 28, 1952, approved the sentence as modified by the convening authority, but suspended the bad-conduct discharge for six months, at which time, unless the suspension be sooner vacated, it should be remitted without further action. A board of review in the office of The Judge Advocate General of the United States Navy on April 14, 1952, affirmed only so much of the sentence as provided for confinement at hard labor for three months. This case was certified to us by The Judge Advocate General, United States Navy, on May 22, 1952, pursuant to Article 67b(2), Uniform Code of Military Justice, 50 USC § 654, on the question of whether the sentence, as affirmed by the board of review is legal.

In its brief the Government contends that the certified question raises the following two issues:

(1) Is a board of review bound by the limitations of punishment which the Manual for Courts-Martial, United States, 1951, imposes on courts and convening authorities?

**123**

(2) Whether, assuming that a board of review is bound by the limitations of punishment imposed on courts and convening authorities, Section B of Paragraph 127c, Manual for Courts-Martial, United States, 1951, requires a punitive discharge as a condition precedent to adjudging increased confinement and forfeitures which that Section authorizes.

The first of the above two issues has been recently decided in the case of United States v. Brasher (No. 449), 6 CMR 50, decided October 20, 1952. The second issue will be considered and determined after disposition of appellate defense counsel's contention that the certificate for grant of review should be dismissed summarily because the question is moot; or, in the alternative, that the sentence be declared illegal as the legislature has not established nor permitted the establishment of an habitual criminal act. These two contentions will be considered seriatim.

Appellate defense counsel contends that the certified question is moot, in that the sentence as ultimately determined by the board of review was for three months' confinement only. The sentence terminated on May 11, 1952, and the accused was restored to duty. We find this argument untenable and conclude that the question is not moot, for under existent regulations of the Department of the Navy the accused could be affected by our determination of the certified question in the computation of leave (see Bureau of Naval Personnel Manual, Chapter 6, Section 4C–6401), and in the computation of longevity increases in pay and re-enlistment allowances (See Bureau of Naval Personnel Manual, Chapter 7, Section 8, Article C, 7817(2)). Moreover, other disabilities or burdens may result if we dismiss this case as moot. See Fiswick v. United States, 329 US 211, 91 L ed 196, 67 S Ct 224. Accordingly, we hold that the certified question is not moot.

In respect to appellate defense counsel's second argument, it is contended that the permissible additional punishment provisions of the Manual for Courts-Martial, United States, 1951, Section B, Paragraph 127c, is the equivalent of the creation of an habitual criminal statute by The President of the United States in his executive capacity, which authority is reserved to the legislative branch of the Government. Accordingly, it is urged, the establishment of Section B, Paragraph 127c, supra, is an extra-legal act and as such void and of no effect. Therefore, any sentence, the severity of which is increased by reason of such a provision, is either void or illegal.

We concede that the power to establish an habitual criminal act is generally reserved to the legislative branch of the Government. However, we cannot agree that Section B, Paragraph 127c, supra, is an habitual criminal statute or the equivalent thereof. Article 56 of the Uniform Code of Military Justice, 50 USC § 637, provides:

"The punishment which a court-martial may direct for an offense shall not exceed such limits as the President may prescribe for that offense."

The President, pursuant to the power vested in him by the Congress, prescribed and promulgated the Manual for Courts-Martial, United States, 1951, including Paragraph 127 which prescribes limitations of punishment. This action on the part of The President of the United States constituted an exercise of the executive authority granted to him by Congress (Uniform Code of Military Justice, Article 56, 50 USC § 637). An examination of the legislative history of the Uniform Code of Military Justice establishes that it was the intention of Congress to give to The President authority to fix any punishment for an offense or offenses unless such punishment was in conflict with an act of Congress. See pages 1087–1089 of the hearings before the Armed Services Committee, House of Representatives, on H.R. 2498, 81st Congress, 1st Session. Articles 18–20,

inclusive, Uniform Code of Military Justice, 50 USC §§ 578–580, specifically authorize The President to prescribe the limitations on punishment that general courts-martial, special courts-martial, and summary courts-martial may adjudge, if not otherwise forbidden by the Code. The statutory authority expressed in these articles is exclusive of the authority delegated to The President in Article 56, supra.

The prescribed punishments in these paragraphs are not new or foreign to the customs and traditions of the several military departments. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, page 387; Section B, Paragraph 104, Manual for Courts-Martial, US Army, 1928; Section B, Paragraph 117c, Manual for Courts-Martial, US Army and US Air Force, 1949. We conclude, therefore, that the power to increase punishment, given by the Uniform Code to the Chief Executive, is not an illegal delegation of legislative authority by the Congress. Further, Paragraph 127 does not represent an unreasonable or arbitrary exercise of executive power and is in no sense the creation of an habitual criminal statute.

We now turn to the principal issue raised by The Judge Advocate General's certified question ▮▮▮▮▮ ■ which requires us to interpret Section B, Paragraph 127c, Manual for Courts-Martial, United States, 1951, to determine whether a punitive discharge is a necessary *condition precedent* to the imposition of increased confinement and forfeitures permitted under this paragraph. Section B, Paragraph 127c, supra, provides in pertinent part as follows:

"If an accused is found guilty of an offense or offenses for none of which dishonorable or bad conduct discharge is authorized, proof of two or more previous convictions *will authorize bad conduct discharge and forfeiture of all pay and allowances and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three*

*months.* In such a case no forfeiture shall be imposed for any period in excess of the period of confinement so adjudged. . . ." [Emphasis supplied]

The trial record in this case establishes that the Navy board of review held that the bad-conduct discharge adjudged by the general court-martial was not justified under the circumstances of this case, and affirmed only such part of the sentence as provided for confinement at hard labor for three months. This decision of the Navy board of review is contra to decisions of Army and Air Force boards of review on the same question. See United States v. Boozer, 4 BR 309 (an Army case), and ACM S–1599, MacDonald, 1 CMR 748. In the Boozer case, supra, an Army board of review interpreted Section B of Paragraph 104, Manual for Courts-Martial, U. S. Army, 1928, which provided:

"If an accused be found guilty by the court of an offense or offenses for none of which dishonorable discharge is authorized, proof of five or more previous convictions will authorize dishonorable discharge, total forfeitures, and, if the confinement otherwise authorized is less than three months, confinement at hard labor for three months."

to mean that in previous conviction cases the court must adjudge as a condition precedent a punitive discharge in order to impose forfeitures and confinement, as provided in Section B of Paragraph 104, supra. In the MacDonald case, supra, the Air Force board of review reached the same conclusion in its construction of Section B, Paragrap 127c, Manual for Courts-Martial, United States, 1951, relying on the precedent in the Boozer case, supra. It is apparent that, in the Boozer case, the Army board of review construed the word "and" as it appeared in the previous Section B, in its most literal and strict grammatical sense. It is a well-established principle ▮▮▮▮▮ ■ that the word "and" may be interpreted to mean "or" to carry out the intention of the

lawmakers. See e. g., United States v. Fisk, 70 US 445, 18 L ed 243; United States v. Tot, 42 F Supp 252 (DC, NJ); Bianco v. Industrial Accident Commission, 24 Cal2d 584, 150 P2d 806; John P. Moriaty, Inc. v. Murphy, 387 Ill 119, 55 NE2d 281.

We believe that the mere tying together of a bad-conduct discharge with total forfeitures and confinement in Section B does not indicate intent that a bad-conduct discharge is a condition precedent to the imposition of the additional forfeitures and confinement authorized in said Section B. Especially does this appear true when three months' confinement is authorized in instances provided for in Section A, Paragraph 127c, Manual for Courts-Martial, United States, 1951, *without the imposition of a bad-conduct discharge.*

The holdings in the MacDonald and Boozer cases would make mandatory a bad-conduct discharge under circumstances such as exist in the instant case. Such holding puts a reviewing authority in the position of determining, as in the case at bar, whether a three-day confinement or a bad-conduct discharge should be adjudged. It eliminates any intermediate sentence between the maximum prescribed for the individual offense and a bad-conduct discharge. Undoubtedly there will be cases where a court, guided by Paragraph 76, Manual for Courts-Martial, United States, 1951, or a board acting pursuant to Paragraph 100 of the same Manual, and in the exercise of sound discretion, may consider additional confinement and forfeiture authorized by Section B entirely fitting and proper, but a bad-conduct discharge unduly severe. We see no logical reason why a court or higher authority should be faced with the sole alternative of either an inadequate or an excessive sentence.

We conclude that courts, reviewing authorities, and boards of review in their application of permissible additional punishments, as provided in Section B, Paragraph 127c, Manual for Courts-Martial, United States, 1951, are not required to adjudge a bad-conduct discharge as a condition precedent to the imposition of forfeitures and confinement. We hold that Section B is permissive and not mandatory, and that the listed punishments are authorized severally, subject to any other applicable limitations on sentences. The action of the Navy board of review in this case was legal.

The question certified to us by The Judge Advocate General of the United States Navy is answered in the affirmative.

Judges LATIMER and BROSMAN concur.